UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LUCIOUS ABRAMS,                         )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 08-1760 (PLF)
                                        )
TOM VILSACK, Secretary,                 )
United States Department of Agriculture,[1] )
                                        )
            Defendant.                  )
_____)

MEMORANDUM OPINION

            This matter is before the Court on the defendant's motion to dismiss the

complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure ("Mot."); the *pro se* plaintiff's opposition thereto ("Opp."); and the defendant's reply

("Reply").  The Court will grant the defendant's motion and dismiss this case.

I.  BACKGROUND

*A.  The Pigford Litigation*

            On October 9, 1998, this Court certified a class of African American farmers who

alleged that the United States Department of Agriculture ("USDA") willfully discriminated

against them when they applied for various farm loan and benefits programs, and then failed to

properly investigate their administrative complaints of discrimination.  See Pigford v. Glickman,

_____

[1]      The complaint names Edward T. Schafer, former Secretary of Agriculture, as the
party defendant.  The Court now substitutes Tom Vilsack, Mr. Schafer's successor, pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure.

182 F.R.D. 341, 351 (D.D.C. 1998). The Court approved a Consent Decree settling the Pigford class action suit on April 14, 1999. See Pigford v. Glickman, 185 F.R.D. 82, 113 (D.D.C. 1999).

The Pigford Consent Decree creates a mechanism for resolving individual claims of class members outside the traditional litigation process. See Pigford v. Glickman, 185 F.R.D. at 94-98. Class members may choose between two claims procedures, known as Track A and Track B. Track A awards $50,000 in monetary damages, debt relief, tax relief, and injunctive relief to those claimants able to meet a low burden of proof. See Consent Decree ¶ 9. Track A claims are decided by a third-party neutral known as the adjudicator. Track B imposes no cap on damages and also provides for debt relief and injunctive relief. See id. ¶ 10. Claimants who choose Track B must prove their claims by a preponderance of the evidence in one-day mini-trials before a third-party neutral known as the arbitrator. Decisions of the adjudicator and the arbitrator are final, except that the monitor, a court-appointed third-party neutral, may on petition direct the adjudicator and the arbitrator to reexamine claims if the monitor determines that "a clear and manifest error has occurred" that is "likely to result in a fundamental miscarriage of justice." See id. ¶¶ 9(a)(v), 9(b)(v), 10(I), 12(b)(iii). There is no provision in the Consent Decree for review by this Court of the third-party neutrals' decisions. The Court does, however, retain jurisdiction to enforce the Consent Decree through contempt proceedings if a party alleges a violation of its terms. See id. ¶¶ 13, 21.

### B. The Plaintiff's Track B Claim

Farmers who wished to seek relief under the Pigford Consent Decree were required to file claim packages by October 12, 1999. See Consent Decree ¶ 5(c). The plaintiff in

2

this case, Lucious Abrams, submitted his claim package on October 11, 1999, <u>see</u> Complaint at 2 ("Compl."), and chose to pursue the procedures under Track B.  On May 31, 2005, the arbitrator rejected Mr. Abrams' Track B claim, concluding that Mr. Abrams had failed to demonstrate by a preponderance of the evidence that he had suffered racial discrimination.  <u>See</u> Mot., Ex. 1, In Re: The Arbitration of Lucious Abrams & Sons, Claim No. 21365 at 6 (May 31, 2005) ("Arb. Decision").

The arbitrator also explained, however, that Mr. Abrams' case was peculiar.  To begin with, it was clear that Mr. Abrams had been victimized by his attorney, Heidi Pender.  <u>See</u> Arb. Decision at 3 (a primary "barrier to the successful prosecution of Mr. [Abrams'] claim was his prior counsel, Heidi Pender").  It appears that Ms. Pender – who was neither class counsel nor of counsel in the <u>Pigford</u> case – failed to appear for hearings, failed to submit evidence in support of Mr. Abrams' Track B claim, and failed to file a memorandum of legal and factual issues in dispute as required.  <u>See</u> Compl. at 8-9; <u>see also</u> Arb. Decision at 3.  Eventually, for reasons not revealed by the record, Ms. Pender withdrew as Mr. Abrams' attorney.[2]

After Ms. Pender withdrew, Mr. Abrams asked the arbitrator to extend the deadlines in his Track B case so that he could seek representation, gather evidence and continue to prosecute his claim.  Citing two decisions of the undersigned addressing that issue, <u>see</u> <u>Pigford v. Veneman</u>, Civil Action No. 97-1978, Memorandum Opinion and Order at 3 (D.D.C. May 5, 2005); <u>Pigford v. Veneman</u>, 344 F. Supp. 2d 149, 152 (D.D.C. 2004), the arbitrator concluded that he had no authority to grant that request.  <u>See</u> Arb. Decision at 2-3.  Thus, in his view "he

---

[2]      It appears that Mr. Abrams then sought representation from a variety of other attorneys and firms – including <u>Pigford</u> class counsel – but was unable to secure representation with respect to the merits of his Track B claim.  <u>See</u> Arb. Decision at 1-2.

[was bound to] examine the record before him, namely the exhibits filed by [Mr. Abrams himself] and [the USDA]." Id. at 3. Finding in that limited record no direct evidence of discriminatory animus or any evidence that "others outside the protected class [ – *i.e.*, white farmers –] were treated more favorably than [Mr. Abrams]," the arbitrator concluded that Mr. Abrams' discrimination claim could not succeed. Id. at 5.

At that point the arbitrator confronted "a difficult choice[.]" Arb. Decision at 6. The Pigford Consent Decree suggests that all Track B claimants are entitled to an evidentiary hearing before their claims are decided, and it does not expressly authorize dismissal of claims without a hearing. See Consent Decree ¶ 10(a)-(g). Mr. Abrams had not received a hearing. Thus, the arbitrator was required to choose between "permitting the claim to go forward [to a hearing], understanding that [Mr. Abrams] has not made a *prima facie* showing of discrimination, or dismissing the claim absent specific language in the Consent Decree authorizing that action." Arb. Decision at 6. On the state of the record before him, the arbitrator concluded that a hearing would be "an exercise in futility," and that the parties to the Consent Decree could not have intended to require hearings in such cases. Id. The arbitrator therefore dismissed Mr. Abrams' case without holding a hearing. Mr. Abrams did not petition the monitor for review of the arbitrator's decision. See Opp. at 4.

> *C. Paragraph 5(g) of the Consent Decree and*
> *the Food, Conservation, and Energy Act of 2008*

As noted above, farmers who wished to seek relief under the Pigford Consent Decree were required to file claim packages by October 12, 1999. See *supra* at 2. The only way for a farmer to become part of the settlement after that deadline was to file under paragraph 5(g)

of the Consent Decree, which allowed late-filing applicants to join the settlement if their failure to file on or before October 12, 1999 resulted from "extraordinary circumstances beyond [their] control."  Consent Decree ¶ 5(g).

After the October 12, 1999 deadline passed, the Court learned that a large number of individuals planned to seek permission to late file under paragraph 5(g).  Finding that it would be more efficient and expeditious to let these claims be decided on a case-by-case basis by the arbitrator, the Court delegated its authority to the arbitrator to apply the "extraordinary circumstances" standard set out in paragraph 5(g).  See Pigford v. Veneman, Civil Action No. 97-1978, Order at 1 (D.D.C. Dec. 20, 1999).  Farmers were permitted to submit these so-called "5(g) petitions" until September 15, 2000.  See Pigford v. Veneman, Civil Action No. 97-1978, Memorandum Opinion and Order at 3 (D.D.C. Nov. 26, 2001).  More than 60,000 farmers availed themselves of that opportunity.  Few of their petitions were granted.

In response to that situation, Congress enacted Section 14012 of the Food, Conservation, and Energy Act of 2008 ("FCEA").  See Pub. L. No. 110-246, 122 Stat. 1651, 2209 (June 18, 2008).  Section 14012 provides relief to those farmers who unsuccessfully sought entry to the Pigford settlement under paragraph 5(g) of the Consent Decree.  Specifically, it provides that "[a]ny Pigford claimant who has not previously obtained a determination on the merits of a Pigford claim may, in a civil action brought in the United States District Court for the District of Columbia, obtain that determination."  FCEA § 14012(b).  The statute defines

"Pigford claimant" to mean "an individual who previously submitted a late-filing request under

[paragraph] 5(g) of the [Pigford Consent Decree]." Id. § 14012(a)(4).[3]

This brings us back to Mr. Abrams' complaint. Mr. Abrams believes that Section

14012 breathes new life into his discrimination claim. He reasons as follows: First, his Track B

claim was dismissed because the record was incomplete, and the record was incomplete because

Ms. Pender failed to meet the applicable deadlines. Second, the dismissal of his Track B claim

was not "on the merits" because the arbitrator dismissed the claim on an incomplete record and

without a hearing. See, e.g., Compl. at 13.[4] Third, the FCEA grants a new cause of action to all

individuals who have not obtained a determination on the merits of their Pigford claims due to

"lateness" of any kind – including the failure to file a claim package in a timely manner (as in the

case of those who unsuccessfully sought entry to the settlement under paragraph 5(g)) and those

who were victimized by their attorneys' untimeliness (as in the case of Mr. Abrams). See Opp. at

6. Thus, concludes Mr. Abrams, as he is a Pigford claimant who did not obtain a determination

on the merits of his Pigford claim due to lateness, he is entitled to renew his claim against the

---

[3]     Eligible individuals may seek relief in this Court in one of two ways. First, they may pursue "expedited resolutions" of their claims, under which they are required to prove their claims only by "substantial evidence." FCEA § 14012(f)(1)(A). If they succeed, they are entitled to relief substantially identical to the relief available under Track A of the Pigford Consent Decree, including liquidated damages in the amount of $50,000. Second, they may seek actual damages. In order to recover actual damages, they must (it seems) prove their claims by the conventional "preponderance of the evidence" standard. See id. § 14012(g). The latter course apparently seeks to replicate the Track B mechanism.

[4]     Mr. Abrams also contends that the arbitrator's failure to hold a hearing denied him due process of law and violated his rights under the Consent Decree. See, e.g., Compl. at 11. The Court has no authority to address such claims. See infra at 7 n.5.

USDA pursuant to the FCEA.  He therefore asks "to be allowed to proceed on his Track B

Pigford claims, . . . as provided by [Section 14012 of the FCEA]."  Compl. at 17.

One point of clarification: It appears that Mr. Abrams seeks to renew his

discrimination claim against the USDA *by bringing a civil action in this Court*.  He does not, in

other words, seem to be asking this Court to overturn the arbitrator's decision, resurrect his Track

B claim and have it considered once again by the third-party neutrals under the Pigford Consent

Decree – though some language in the complaint could be interpreted in that manner.  The Court

reaches this conclusion for two reasons.  First, the Court has an obligation to interpret *pro se*

complaints generously.  See Boyd v. Chertoff, 540 F. Supp. 2d 210, 215 (D.D.C. 2008).  One

could read Mr. Abrams' complaint, or at least certain parts of it, as seeking to resurrect his Track

B claim under the Consent Decree.  But it is not necessary to read the complaint in that way, and

on that reading Mr. Abrams' suit certainly would lack merit.[5]  The Court therefore declines to

read Mr. Abrams' complaint in that manner.

Second, Mr. Abrams' complaint specifically asks this Court to allow his

discrimination claim to be heard and decided on the merits "*as provided by [Section 14012 of the

FCEA]*," Compl. at 17 (emphasis added).  It also asserts that the Court's jurisdiction in this

matter arises under Section 14012 of the FCEA.  See id. at 1.  Section 14012 permits eligible

individuals to pursue their discrimination claims in one forum only: this Court.  Thus, in light of

---

[5]     Nothing in the Consent Decree authorizes the Court to grant such relief.  The
Consent Decree provides that decisions of the arbitrator are final (except that the parties may
petition the monitor for review), and that those who seek relief under Track B "forever waive
their right to seek review in any court or before any tribunal of the decision of the arbitrator with
respect to any claim that is, or could have been decided, by the arbitrator."  Consent Decree
¶ 10(I).  Nor does Section 14012 purport to resurrect claims under the Consent Decree.  It merely
permits certain individuals to seek relief by filing suit *in this Court*.  See FCEA § 14012(b).

his repeated references to Section 14012, it would make little sense to interpret Mr. Abrams'

complaint as seeking any other relief than to permit his claim to be heard in this Court.

   As explained below, the USDA contends that Mr. Abrams is not eligible to seek

relief under Section 14012 because he is not a "<u>Pigford</u> claimant" as defined by the statute.

Thus, argues the USDA, Mr. Abrams' complaint must be dismissed.  <u>See</u> Mot. at 7; <u>see</u> <u>also</u>

Reply at 4.

<h2>II. STANDARD OF REVIEW</h2>

   Rule 12(b)(6) allows dismissal of a complaint if a plaintiff fails "to state a claim

upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  On a motion to dismiss under Rule

12(b)(6), the Court must accept as true all of the factual allegations contained in the complaint.

<u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The complaint "is construed

liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all

inferences that can be derived from the facts alleged."  <u>Kowal v. MCI Communications Corp.</u>,

16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court need not accept inferences drawn by the

plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court

accept plaintiff's legal conclusions.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).

<h2>III. DISCUSSION</h2>

   The USDA makes a relatively straightforward argument in favor of dismissal.  It

argues that (1) Section 14012 of the FCEA permits a defined group of individuals – specifically,

those "who previously submitted a late-filing request under [paragraph] 5(g) of the [<u>Pigford</u>

Consent Decree]" – to file a discrimination suit against the USDA in this Court; (2) Mr. Abrams

did not submit a "late-filing request" under paragraph 5(g); and (3) as Mr. Abrams does not fall

within the class of individuals Section 14012 was intended to benefit, he has failed to state a

claim under the statute.  See, e.g., Reply at 4.  The Court agrees with that argument.

       Mr. Abrams acknowledges that he did not submit a "late-filing request" under

paragraph 5(g), but rather sought and received admission to the Pigford settlement before the

October 12, 1999 deadline.  See Compl. at 2.  Nevertheless, he maintains that he may renew his

claim against the USDA in this Court because Section 14012 grants a cause of action to *all*

Pigford claimants who tried, but failed for reasons related to "lateness," to obtain a

"determination on the merits" of their claims.  See Opp. at 6.  This theory must be rejected

because it conflicts with the plain language of Section 14012.  See Desert Palace, Inc. v. Costa,

539 U.S. 90, 98 (2003) (where the words of a statute are unambiguous, "the judicial inquiry is

complete") (internal quotation marks and citations omitted).  In no uncertain terms, Section

14012(a)(4) limits the relief granted by the FCEA to those Pigford claimants "who previously

submitted a late-filing request under [paragraph] 5(g) of the [Pigford Consent Decree]."  FCEA

§ 14012(a)(4).  Mr. Abrams is a Pigford claimant, but he is not one of *those* Pigford claimants.

Thus, he has not stated a claim for relief under the FCEA and his claim must be dismissed.[6]

---

[6]    Nor may Mr. Abrams avoid this conclusion by pointing out that Congress
intended Section 14012 to be "liberally construed so as to effectuate its remedial purpose of
giving a full determination on the merits for each Pigford claim previously denied that
determination."  FCEA § 14012(d).  The "remedial purpose" of the statute is to grant relief to a
specific group of individuals: those who unsuccessfully sought admission to the settlement under
paragraph 5(g).  Mr. Abrams does not fall into that category.  Thus, an interpretation of the
statute that provided relief to Mr. Abrams would not serve the remedial purpose of the statute.

An Order consistent with this Memorandum Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  August 24, 2009                    United States District Judge